# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**WESLEY LOUCKA**,

          Plaintiff,

          v.

**LINCOLN NAT'L LIFE INS. CO.**,

          Defendant.

Case No. 1:17-cv-01375 (TNM)

## MEMORANDUM OPINION

This case involves the fraught question of insurance coverage for individuals with symptoms associated with Lyme disease. Wesley Loucka brought this action under the Employee Retirement Income Security Act of 1974, *see* 29 U.S.C. § 1132, claiming that Lincoln National Life Insurance Company improperly denied him disability benefits. Mr. Loucka says that Lincoln unreasonably concluded that he suffers from Chronic Fatigue Syndrome ("CFS"), a condition that the relevant policy limits to 24 months of long-term disability benefits. He asserts the he has Lyme disease, which is not subject to the policy's 24-month benefits limitation. Lincoln, however, maintains that the medical evidence shows that Mr. Loucka does not have Lyme disease and his symptoms suggest CFS. The parties have filed cross motions for summary judgment. Mr. Loucka has also moved to strike exhibits from Lincoln's summary judgment papers. For the reasons explained below, Mr. Loucka's Motion to Strike will be denied, his Motion for Summary Judgment will be denied, and Lincoln's Cross Motion for Summary Judgment will be granted.

## I.

Wesley Loucka worked as a Systems Administrator at NOVA Corporation, which offered its employees long-term disability coverage through a group policy (the "Policy") issued by Lincoln National Life Insurance Company, the Policy's insurer and claims administrator. *See* LIN00125–205. The Policy is subject to ERISA. *See, e.g.*, LIN00140.

Insureds seeking long-term disability benefits must first show that they meet the Policy's definition of "disabled." LIN000150. If an insured is disabled primarily because of certain "Specified Injuries or Sicknesses," then benefits are limited to 24 months. LIN000157. One such illness is "Chronic Fatigue Sickness," "a sickness that is characterized by a debilitating fatigue, in the absence of other known medical or psychological conditions. It includes, but is not limited to . . . chronic fatigue syndrome . . . ." *Id.*

## A.

In 2013, Mr. Loucka sought treatment for fatigue, joint pain, and muscle soreness. That May he tested negative for Lyme disease and his metabolic screening panel came back normal. *See* LIN00621. Mr. Loucka was tested again in November 2013. *See* LIN05157–60. That test was also negative for Lyme disease. *Id.* Still, he sought treatment from Dr. Joseph Jemsek, whose clinic specializes in Lyme disease treatment. *See* LIN09169. During their initial meeting, Mr. Loucka told Dr. Jemsek that he had "had extensive exposure to ticks" and had found ticks on him, "but [they] never attached." *Id.* He also reported that he began noticing symptoms in February 2013 "with the onset of fatigue" and that only three months later he "notic[ed] excessive fatigue." *Id.*

Dr. Jemsek ordered another round of blood testing, and a private laboratory called IGeneX conducted IgM and IgG Western Blot tests. *See* LIN07246–47. The IgM and IgG

Western Blot tests are common Lyme disease diagnostic tests. *See* Daniel L. Depietropaolo et al., *Diagnosis of Lyme Disease*, 72 Am. Fam. Physician 297 (2005) (available at LIN00816–17, 00432–37). But IGeneX did not conduct an EIA/ELISA or IFA test, which the Centers for Disease Control's ("CDC") two-tiered Lyme diagnostic procedure requires before any Western Blot testing. LIN00212. IGeneX also used its own criteria for interpreting the test results instead of the CDC's. LIN007246–47. Ultimately, the IgG blot test was negative for the presence of Lyme disease under both the CDC's and IGeneX's criteria, and the IgM blot test was negative under the CDC's criteria but indeterminate under IGeneX's alternative criteria. *Id.*

In April 2014, Dr. Jemsek noted that Mr. Loucka was "still unsure about his Lyme diagnosis." LIN007140. Nonetheless, he put Mr. Loucka on an intensive antibiotic regime, a common treatment for Lyme disease. *See* LIN00210–13. Even with antibiotics Mr. Loucka's symptoms persisted: he reported "increased neuropathy;" "increased anxiety, [joint] pain . . . , paresthesia[] in the face and brain, as well as 'body agitation;'" "gastrointestinal tenderness;" and "increased arthralgias and . . . lower back pain." LIN007142. After Mr. Loucka began antibiotic treatments, IGeneX tested Mr. Loucka's liver tissue looking for evidence of DNA from the bacterium that cause Lyme disease. LIN07243–44. The tests were negative for bacterial DNA. *Id.*

Later that year a psychologist, internal medicine doctor, and infectious disease specialist at the Mayo Clinic evaluated Mr. Loucka and suggested he had "CFS and GAD [Generalized Anxiety Disorder]." LIN007146. By September, after several months of antibiotics, Mr. Loucka continued to have "some ambivalence [about] whether he truly ha[d] tickborne illness," because he "had not seen the improvement he was hoping for" despite intensive treatment. *Id.* His condition was "only maintaining, maybe even slowly worsening." *Id.* Indeed, "[h]e continue[d]

to have waves of fatigue, increasing[] lightheadedness, moodiness, full[] body agitation, brain tingling." *Id.* But Dr. Jemsek continued to prescribe intensive antibiotic treatments, even though Mr. Loucka reported "no real clinical progress" and he "[wa]s not responding well to therapy." LIN07150.

## B.

Ultimately, Mr. Loucka filed a claim for long-term disability benefits, LIN15204–15, and he included with his application a functional capacity assessment from Dr. Jemsek. He diagnosed Mr. Loucka with "Lyme borreliosis complex, a chronic, multisystemic, inflammatory illness." LIN15216. Lincoln's experts disagreed. Dr. Gary Greenhood, who is board certified in internal medicine and infectious disease, reviewed Mr. Loucka's claim and found that Mr. Loucka was impaired. LIN00014–15. But Dr. Greenhood warned that the evidence "does not support that the claimant has Lyme disease. In addition to no report of a first tier test to Lyme disease, both IgM and IgG Western Blot tests are negative by CDC . . . criteria." *Id.* After Mr. Loucka submitted additional material, Dr. Greenhood conducted a supplemental review, but he maintained that Lyme disease was unsupported. *See* LIN00035. He instead concluded that "the likely diagnosis is Chronic Fatigue Syndrome." *Id.*

Dr. Kent Crossley, who is board-certified in internal medicine and infectious disease, also reviewed Loucka's medical records for Lincoln. While quibbling with Dr. Greenhood's conclusion on impairment, he also found "no evidence of any infectious process including Lyme disease." LIN02301. Dr. Crossley noted that Mr. Loucka's physical limitations were "entirely self-reported" and that "Western Blot testing was done in February 2014 and was negative."

LIN02300.  Dr. Crossley agreed that Mr. Loucka's symptoms "support a diagnosis of Chronic Fatigue Syndrome."  LIN2301.

Despite the differing opinions with respect to impairment, Lincoln's claim examiner approved Mr. Loucka's claim for long-term disability, effective as of October 5, 2014. LIN14842.  But because Mr. Loucka was found to be disabled due to CFS, the claims examiner explained that the Policy "limits benefits to 24 months for the condition causing [Mr. Loucka's] disability."  LIN14843.  In April 2016, Lincoln sent a letter to Mr. Loucka reminding him of the Policy's 24-month benefits limitation and informing him that his long-term disability benefits would end that October.  LIN06134.  Mr. Loucka appealed Lincoln's decision through the company's appeals process.

Dr. Mireya Wessolossky, who is board certified in infectious disease, reviewed Mr. Loucka's appeal.  After reviewing the medical evidence, she concluded that there was "a lack of clinical and laboratory evidence for Lyme disease."  LIN08475.  She observed that Mr. Loucka's "numerous blood tests" were "normal and negative" for Lyme disease.  LIN08474.  She also noted that Mr. Loucka "had endured cycles of antibiotic therapy with lacking improvements." *Id.*  And she disagreed with Dr. Jemsek's interpretation of Mr. Loucka's Lyme serology, because "by the CDC's criteria, [Mr. Loucka]'s tests were repeatedly negative."  *Id.*  Dr. Wessolossky concluded that Mr. Loucka's symptoms "seem to be related towards CFS," and based on the medical evidence, she was "under the impression that [Mr. Loucka] suffers from chronic fatigue syndrome (CFS) associated with anxiety and depression."  *Id.*  Based on Dr. Wessolossky's report, Lincoln affirmed its decision limiting Mr. Loucka to 24 months of long-term benefits.

Mr. Loucka then filed this suit.  But because the Policy requires claimants to exhaust two levels of appeal before suing, the Court stayed the action to allow Mr. Loucka to pursue a

second-level internal appeal.  *See* Court's September 13, 2017, Minute Order granting parties' Consent Mot. to Stay Litigation, ECF # 6.  Dr. Joseph Vinetz, who is board certified in internal medicine and infectious disease, and Dr. Rajendra Marwah, who is board certified in rheumatology and internal medicine, reviewed Mr. Loucka's second-level appeal.  Citing much of the medical evidence that has already been discussed, Dr. Vinetz concluded that Mr. Loucka did not "meet the criteria for the diagnosis of Lyme disease."  LIN00209–10.  Dr. Marwah similarly concluded that Mr. Loucka does not meet the CDC's criteria for a diagnosis of Lyme disease.  LIN00211.  Drs. Vinetz and Marwah also agreed that Mr. Loucka's symptomology suggested that he suffers from CFS.  *See* LIN00210–12.  Even after Mr. Loucka submitted additional material, Drs. Vinetz and Marwah maintained that Mr. Loucka did not have clinical features or laboratory confirmation of Lyme disease based on the CDC's criteria.  *See* LIN00238–42.

Lincoln subsequently upheld its decision, *see* LIN00222–36, and Mr. Loucka returned to court, again seeking to clarify and enforce his rights under the Policy, as permitted by ERISA, *see* 29 U.S.C. § 1132(a).[1]

In its summary judgment papers, Lincoln included three footnotes referencing the CDC's webpages about the agency's Lyme-testing criteria and procedures.  It also attached a declaration from Thomas Vargo, Lincoln's Director of Appeals, about Lincoln's procedures for reducing conflicts of interest and promoting accuracy during the claim review process.  Mr. Loucka moved to strike the references to the CDC's website and Mr. Vargo's declaration, citing the general principle that "[c]ourts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum."  *Block v. Pitney Bowes*

---

[1] The Court therefore has subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

*Inc.*, 952 F.2d 1450, 1455 (D.C. Cir. 1998). The motion to strike and the cross motions for summary judgment are now ripe for decision.

## II.

A motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all the facts in the light most favorable to the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

But the non-moving party's opposition must consist of more than mere unsupported allegations or denials, and it must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, because "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The Court "review[s] a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B), under a *de novo* standard, rather than under the more deferential arbitrary and capricious standard, 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 433 (D.C. Cir. 2011) (quoting *Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Despite Mr. Loucka's claims to the contrary, the Policy here explicitly grants Lincoln discretionary authority to "interpret [the Policy's] provisions, administer claims," and make eligibility determinations. LIN00141. Thus, in reviewing Lincoln's decision to terminate Mr. Loucka's benefits after 24 months, the Court must determine whether that decision was reasonable. *See Block*, 952 F.2d at 1452. "A decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. Substantial evidence means more than a scintilla but less than a preponderance." *Buford v. UNUM Life Ins. Co. of America*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003) (cleaned up).

Finally, parties may attach affidavits and declarations to their summary judgment papers, so long as the exhibits are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Accordingly, a Court may strike all or part of an affidavit or declaration for failing to satisfy Rule 56's requirements. *U.S. ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency*, 456 F. Supp. 2d 46, 51 (D.D.C. 2006).

## III.

### A.

Mr. Loucka initially challenges Lincoln's inclusion of references to the CDC's webpages about the agency's Lyme-testing criteria and procedures. His argument falls short. True, courts generally "review ERISA-based benefit decisions on the evidence presented to the plan administrators and not based on a record made in another forum." *Block*, 952 F.2d at 1455. But courts "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b)(2). And courts have often taken judicial notice of information found on government agency websites. *See, e.g.*, *Cannon v. District of Columbia*, 717 F.3d 200, 202 n.2 (D.C. Cir. 2013); *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).

Here, the CDC's Lyme-testing criteria and procedures are a matter of public record, and it cannot be reasonably questioned that the agency's website is an accurate source for those standards. Indeed, in *Gent v. CUNA Mut. Ins. Soc'y*, the First Circuit took judicial notice of information from the CDC's webpages about Lyme-testing criteria and procedures, even though it recognized that it was "unclear to what extent the information on the CDC's website [wa]s formally part of the record.'" 611 F.3d 79, 84 n.5 (1st Cir. 2010). The court in *Brown v. Fed. Express Corp.* also took judicial notice of the CDC's webpages about Lyme-testing. 62 F. Supp. 3d 681, 687 (W.D. Tenn. 2014). So too here.[2]

Mr. Loucka's arguments to strike Mr. Vargo's declaration similarly lack merit. Mr. Loucka contends that the factual allegations made in the declaration are "inadmissible as they were not raised during the administrative appeal process and constitute[] . . . post-hoc rationalization that is clearly barred in ERISA-based cases." Pl.'s Mot. to Strike, ECF # 20-1, Page 5. But Mr. Vargo's declaration is not post hoc argumentation. It addresses only Lincoln's procedures for reducing potential bias and promoting accuracy during the claim review process, which courts may consider when evaluating an administrator's decision. *See Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–17 (2008). It does not address the rationale behind Lincoln's

---

[2] In any event, the substance of the CDC webpages that Lincoln references—the CDC's two-step Lyme-testing procedure, the agency's standards for evaluating blood-test results, and general information about Lyme disease—is all available in the administrative record. *See, e.g.*, LIN00212 (discussing the CDC's two-tiered diagnostic procedures); LIN07246–47 (explaining the CDC's criteria for evaluation Western Blot tests). So the premise underlying Loucka's argument for striking Lincoln's references—that the webpages are extra-record evidence—is flawed.

conclusion that Mr. Loucka suffers from CFS, nor does it purport to offer any alternative reasons why the Policy's 24-month benefits limitation applies.

What is more, while courts may not consider extra-record evidence about the substance or basis of an ERISA administrator's determination, courts have recognized a limited exception for extra-record evidence regarding an administrator's alleged conflict of interest. *See Murphy v. Deliotte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1161–62 (10th Cir. 2010). For example, "[w]hile discovery is generally unavailable where an ERISA plan grants discretion to the administrator, there are limited exceptions to this prohibition," including "discovery regarding alleged conflicts of interest and procedural irregularities." *Crummett v. Met. Life Ins. Co.*, 2007 WL 2071704, at *3 (D.D.C. July 17, 2007) (collecting cases from the Fourth, Seventh, and Ninth Circuits); *see also Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011).

In *Murphy*, the court recognized that the established rule precluding consideration of extra-record material related to a claimant's eligibility for benefits "does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest." 619 F.3d at 1158. Indeed, courts often rely on affidavits and declarations submitted during litigation about administrators' safeguards against conflicts of interest. *See, e.g.*, *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1202 (10th Cir. 2013); *Mugan v. Hartford Life Grp. Ins. Co.*, 765 F. Supp. 2d 359, 373 (S.D.N.Y. 2011). So the Court may properly consider Mr. Vargo's declaration. Although, as discussed below, even if the Court ignored Mr. Vargo's declaration, Loucka's claim would still fail.

**B.**

Mr. Loucka fares no better on his summary judgment arguments. First, Mr. Loucka contends that Lincoln bears the burden of proving that the Policy's 24-month benefits limitation for certain "Specified Injuries and Sicknesses" applies. He misplaces the burden. Under ERISA, "the burden of proof is upon the insured as to questions of coverage and disability," *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 494 (D.C. Cir. 1998), and here the Policy provides that the claimant's proof of claim "must show the date the disability began, *its cause* and degree." LIN00138 (emphasis added).

Mr. Loucka counters that the burden rests on "administrators to demonstrate how a specific policy exclusion applies to deny benefits." Pl. Mot. for Summ. J., ECF # 16-1, Page 30 (citing cases). But while "[f]acially, [a 24-month] limitation might appear to operate much like an exclusion," where a policy requires claimants to provide proof of the cause of disability, "[o]ne could argue that these provisions put the burden on [the claimant] to establish the physical or organic etiology of h[is] disability in order for h[im] to be eligible to continue receiving benefits after two years." *Gent*, 611 F.3d at 83. Regardless, when, as here, the Court must decide only whether an administrator's decision was reasonable, "how the burden is allocated does not much matter unless one or both parties fail to produce evidence, or the evidence presented by the two sides is in 'perfect equipoise.'" *Id.* (citing *LPP Mortg., Ltd. v. Sugarman*, 565 F.3d 28, 33 (1st Cir. 2009)).

And here the considerable evidence is not in "perfect equipoise." The medical evidence in the administrative record overwhelmingly shows that Lincoln reasonably concluded that Mr. Loucka suffers from CFS, not Lyme disease. Thus, Lincoln properly limited Mr. Loucka's benefits under the Policy. Five physicians—Drs. Greenhood, Crossley, Wessolossky, Vinetz,

and Marwah—agreed after reviewing Mr. Loucka's file that he does not have Lyme disease. *See* LIN00014–15 (Dr. Greenhood); LIN02301 (Dr. Crossley); LIN08474–75 Dr. (Wessolossky); LIN00209–10 (Dr. Vinetz); LIN00210–12 (Dr. Marwah). They cited Mr. Loucka's various blood tests, observing that he never underwent the CDC's two-step Lyme testing protocol and his IgM and IgG Western blot tests were negative by the CDC's standards. *See, e.g.*, LIN08474. Even under IGeneX's alternative criteria, Mr. Loucka's IgG Western blot was negative, and his IgM Western blot was "indeterminate." LIN07246–47. Drs. Vinetz, Marwah, and Wessolossky also observed that Loucka saw no improvement despite intensive treatment with antibiotics when "[m]ost cases of Lyme disease can be treated successfully with a few weeks of antibiotics." *See, e.g.*, LIN00210. And all five physicians agreed that Loucka's symptoms evinced CFS. *See* LIN00035 (Dr. Greenhood); LIN02298–2301 (Dr. Crossley); LIN08473–76 (Dr. Wessolossky); LIN01468–73 (Dr. Vinetz); LIN01458–67 (Dr. Marwah).

In fact, Dr. Jemsek, Mr. Loucka's treating physician, is the only physician to conclude that Mr. Loucka suffers from Lyme disease. His conclusion was based, in part, on his opinion that the CDC's Lyme-testing criteria and procedures are "antique and obsolete." *See* LIN00237. So Mr. Loucka's argument, ultimately, is that Lincoln unreasonably credited the reviewing physicians' opinions—based on the CDC's Lyme-testing standards—over his treating physician's opinion—based on alternative standards. But if Mr. Loucka's argument is that Dr. Jemsek's opinion is entitled to greater weight because he is Mr. Loucka's treating physician, the law disagrees. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822,

834 (2003); *see also Marcin v. Reliance Standard Life Ins. Co.*, 861 F.3d 254, 265 (D.C. Cir. 2017). Dr. Jemsek's conclusion that Loucka suffers from Lyme disease conflicted with substantial, reliable evidence in the form of five separate medical opinions that ruled out Lyme disease and concluded that Loucka most likely suffers from CFS. As in *Pettaway*, the Court "cannot conclude that [the plan administrator] acted unreasonably when it valued the opinion of its own personnel over that of [the insured's]." 644 F.3d at 435.

If Mr. Loucka's objection is to Lincoln's reliance on the CDC's Lyme-testing standards, his objection is similarly unavailing. Dr. Jemsek claims that the CDC's criteria are "antique and obsolete," and perhaps he is right that there is reason to question the agency's Lyme-testing standards. *See e.g.*, Holly J. Westervelt and Robert J. McCaffery, *Neuropsychological Functioning in Chronic Lyme Disease*, 12 Neuropsychology Rev. 153, 156 (2002) (noting that "[m]any clinicians and scientists feel that [the CDC's] criteria are too strict") (available at LIN01376). But Mr. Loucka's counsel's prolix discussion of Lyme disease, with little to no specific citations to the record or other authoritative material, ultimately does little to advance his client's case. Whether the CDC's Lyme-testing criteria and procedures are medically sound is not before the Court. The pertinent question is whether it was reasonable for Lincoln to rely on the CDC's standards to evaluate Mr. Loucka's file.

It was. Courts frequently defer to reviewing physicians' reliance upon the CDC criteria. For example, the *Gent* court considered a claim like Mr. Loucka's, and in affirming the administrator's conclusion that the plaintiff did not suffer from Lyme disease, the First Circuit approvingly cited the administrator's use of the CDC's standards. 611 F.3d at 84–86. The court explained that the "arguments that Gent's disability was not caused by Lyme disease [was] the better-supported position," in large part because the laboratory data, evaluated under the CDC's

criteria, "lines up almost uniformly against such a diagnosis." *Id.* at 86. And other courts similarly have determined that administrators may reasonably rely the CDC's Lyme-testing criteria to determine whether a claimant has Lyme disease. *See, e.g.*, *Brown*, 62 F. Supp. 3d at 686–87 (upholding administrator's denial of benefits where claimant's Lyme blood tests were negative under the CDC's two-step testing regime). Ultimately, even if there is genuine medical disagreement about the efficacy of the CDC's Lyme-testing standards, conflicting medical evidence need not render an administrator's decision arbitrary and capricious, because "[t]he ability to choose among conflicting evidence is essentially a natural outgrowth of the discretion that the plan affords to the plan administer." *Mobley v. Cont'l Causalty Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005). In short, Lincoln's reliance on the CDC's Lyme-testing criteria and procedures was reasonable.

Mr. Loucka's final line of attack is to assert that Lincoln's claim review process suffers from structural conflicts of interest, a factor courts may consider when reviewing the lawfulness of an administrator's decision. *See Glenn*, 554 U.S. at 115–18. But any one factor will act only as a "tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* at 117. Here, the evidence is not "closely balanced." Moreover, to show Lincoln's alleged bias and conflicts Mr. Loucka cites cases from other jurisdictions that are unrelated to the current action; some are nearly two decades old. *See* Pl. Mot. Summ. J., ECF #16-1, Pages 35–36 (citing, e.g., *Vartanian v. Met. Life Ins. Co.* 2002 WL 484852 (N.D. Ill Mar. 29, 2002)).

Mr. Loucka, however, disregards the specifics of this case: Lincoln initially awarded benefits despite conflicting opinions on whether Mr. Loucka was disabled; it allowed Mr. Loucka to submit substantial medical evidence and literature—much of which was irrelevant—in

support of his claim; it permitted Mr. Loucka to submit a second-level appeal even though his request was untimely under the Policy; and finally it allowed Mr. Loucka an opportunity to review and rebut Dr. Vintez and Dr. Marwah's initial reports from the second-level review. "None of these actions were in [the administrator's] interest, and they therefore provide strong indications that [the administrator] endeavored to administer the plan fairly." *Brown v. Hartford Life & Accident Ins. Co.*, 12 F. Supp. 3d 88, 98 (D.D.C. 2014). Certainly, Mr. Loucka's evidence of Lincoln's alleged structural conflicts is not strong enough to overcome the overwhelming evidence in favor of finding Lincoln's decision reasonable.

What is more, structural conflicts of interest are less important "(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 117. Considering the content of Mr. Vargo's declaration, Lincoln has taken significant steps to reduce potential bias in the claim review process. Thus, the conflict factor approaches "the vanishing point" here, and it is even more true that it cannot overcome the overwhelming evidence supporting Lincoln's position. Because Lincoln's conclusion that Mr. Loucka suffers from CFS, not Lyme disease, is the product of a deliberate, principled reasoning process and is supported by substantial evidence, its decision to limit Mr. Loucka's benefits to 24 months under the Policy was reasonable.

## IV.

The Court does not doubt that Mr. Loucka has suffered greatly, and it acknowledges the medical uncertainties surrounding Lyme disease and the added difficulties patients like Mr. Loucka endure as a result. Unfortunately, these are issues courts of law are ill-equipped to address. In light of the CDC's current guidance on Lyme disease and the discretion ERISA

grants to plan administrators, plaintiffs face a high bar when challenging an insurance company's determination in this area. Mr. Loucka has not cleared this bar.

For all these reasons, Mr. Loucka's Motion to Strike is denied, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Cross Motion for Summary Judgment is granted. A separate order will issue.


Dated: November 7, 2018

_____
TREVOR N. MCFADDEN
United States District Judge